All right, the next case we'll hear is United States v. McLeod, and Mr. Metz, when you're ready, we'll hear from you. Thank you, Your Honor. May it please the Court, Mike Metz. I'm an assistant federal public defender in Florence on behalf of Gregory McLeod. We're here today to decide, this Court is to decide, whether or not Mr. McLeod's convictions for burglary second degree in South Carolina qualify as violent felonies under the Armed Career Criminal Act. Our position is that… And that's basically because a structure can include a boat or a car or a train or whatever like that, isn't that what it comes down to? That's right, Your Honor. And that was Taylor, too, wasn't it? Well, Taylor's the case that set up the categorical… Missouri's statute had a boat or a car… That's right. …in its structure, and they said, well, the way to handle that is to do a modified categorical approach, right? Well, they said the way to handle that is to do the categorical approach, and… Well, they said you can look at other… solve whether it's under the… whether it was a car or a thing. You can look at what came later, the Shepard documents. Well, that's true. There is a modified categorical approach, but we don't believe that it applies in Mr. McLeod's case. Because of Deskamps? Yes, sir. Deskamps didn't overrule Taylor, did it? Didn't overrule it, but it clarified when you're allowed to get to the modified categorical approach, and that's only when you have a divisible statute. Mr. McLeod is… I thought they concluded that if it's divisible, any one of those things would violate. If you entered a dwelling or you entered a car, these are all divisible. It doesn't have to be physically divisible. It has to be conceptually divisible. The big point is that for it to be divisible, those have to be separate elements. They have to define separate crimes. Mr. McLeod was convicted… What are we going to do with Taylor? I mean, this is all four square with Taylor. There isn't even a distinction. I can't figure out how we're going to handle Taylor. Are we going to say the Supreme Court overruled Taylor? Taylor's still there. This burglary statute that we have is just simply overbroad. It's overbroad in the sense that it includes a car or a boat. That's right. That's not generic burglary. That's broader than generic burglary. And that's what the Supreme Court observed in the Missouri statute. Well, those things are not elements in South Carolina. All they have to do is prove that juries are instructed this is going to be burglary of a building or burglary of a dwelling. They have definitional statutes that say it's these other things too. The juries don't have to decide those things unanimously. They decide building or they decide dwelling. Those in state versus smalls, the South Carolina court says that those are definitions, not elements. And our position simply boils down to the fact that this is an overbroad burglary statute. He can be convicted of breaking into a plane or a car. I think we need some professors to write some textbooks on how to qualify predicate offenses under Supreme Court jurisprudence. It seems to me we have been whipsawed back and forth by one Supreme Court case after another. Your argument is far from frivolous, I can tell you. It's a difficult area. Maybe we ought to get that article sent to the Supreme Court when it's written too because we do what you try to do. Do you make any argument under B in this case? No, sir. He wasn't convicted under the B section. He was plead guilty to burglary two, nonviolent. So that makes it under the A section. Now, how do we know that looking at what you've told us? Well... I couldn't find that. Because it looked to me he was certainly indicted under B. He was indicted under the B section for most of those, and he pled guilty under the A section. They have nonviolent written on the sentencing documents. Where does the record show that? We submitted a second supplemental joint appendix with those documents, and it's handwritten in under the indictment numbers. And you argued that where? I argued it in my regular brief and inadvertently forgot to submit those documents I thought I had, but I did. You argued that he was convicted under A and not B, although charged under B? He was charged under B. No, no, I said did you argue that? Because I didn't get any of that from what you wrote to us. Well, I wrote that he was convicted under the nonviolent burglary statute. Well, just let me say this, though. The government says that you waived any argument under the B part, but they said you waived the argument. I didn't make an argument under B. I think B is a stronger argument for me, really. I know, and in your reply brief you said the government misunderstood your argument. I didn't submit a reply brief. Why do you think it's stronger under B? Because the definition of building is clearly more than just a building. That's the building definition. A uses dwelling, right? A is dwelling. Dwelling means building. Building means car. What's the difference? What's the difference between the two? Yeah, I mean, if dwelling is defined as building and A uses dwelling, which means building, and B uses building, which is both terms which are defined. Well, dwelling is. . . If you look just at the face of the statute, dwelling looks like you're in deep trouble because dwelling is a place where people live. But then they define dwelling to be a building, and a building includes boats and cars. It does, and building also means the sleeping quarters of those things. So what we have here, let's say I'm at a football game and my team's losing. I decide I want to leave at halftime and I go out in the parking lot and I'm so upset I decide to break into a guy's RV that's out there. When I go in the RV without permission and take something from around the driver's seat, I just committed burglary of a building. If I go in the back to the guy's bedroom where he sleeps and take something from there, then I've committed burglary of a dwelling. And there's no difference if that case is tried in South Carolina. The jury's going to get instructed of building or dwelling or whichever one it was. Is this a South Carolina problem again? Yeah. Yes, sir. Not unique to South Carolina, I can tell you that. All right. But I do not understand how where in your brief is this argument made? I don't understand. I read your brief and what you're saying now, I didn't understand that from your brief at all. The way I wrote the brief about burglary, Judge, is I set forth that he pled to nonviolent burglary, which is what he did. And you have to look at 16160 in the code that sets forth the list. Did you explain all that in your brief? I believe I did. But you may have put it in there. I don't think you explained it because I couldn't follow your argument at all. Well, that's what I meant to do is say that he pled guilty to nonviolent burglary. Violent burglary is burglary under the B section, so necessarily he had to plead to the A section, which is what he did plead to. So you can plead for an offense not in the indictment? It happens all the time. That's what happened. Okay. Thank you, Your Honor. Thank you. All right. Mr. Garner? Good morning. You may have pleased the Court. Ben Garner on behalf of the United States. In addressing the appellant's challenge to the district court's application of the Armed Career Criminal Act to enhance the sentence based upon his five prior predicate offenses, I'd like to underscore three important points that are undisputed in this appeal. First is that the appellant in this case was charged with, convicted of, and sentenced to second-degree burglary under South Carolina's second-degree burglary statute, which is codified at South Carolina. A or B? It's the government's position that it's B. And ultimately, it doesn't matter, Judge Shad. Did you understand his argument to be as he just made it, standing there? Not reading his briefs. What about the joint appendix, the supplemental one that was filed, second supplemental joint appendix? Right. It shows the convictions, and it looks like he pled guilty to second-degree burglary nonviolence. Right. Isn't it fair? I mean, each one of the sentencing forms says second-degree burglary nonviolence. Judge Keenan, what we have here are the defendant's prior convictions in this case are somewhat ambiguous insofar as the Shepard-approved documents that are contained in the record are distinct from one another. The charging documents, i.e. the indictments in this case, unambiguously disclose that the defendant was charged with second-degree burglary of a building. Right. I'm talking about the sentencing documents. Right. In the sentencing documents. But he didn't plead guilty to that. There was an implicit amendment to the indictment. That's right. It's clear from the supplemental record that the defendant submitted on August 13th that he was sentenced under subsection A. Does it matter for purposes of federal law whether it's under A or B? Absolutely not, Your Honor. Is that because of the definition of building? It is. It is. And it's the government's position that both sections are divisible for the reasons that Your Honor articulated. Well, I'm not so sure. I was asking that question. But I'm going to tell you, I think the law in this area, the Supreme Court in its most recent case talks about the difference between the means and the elements. And the truth of the matter is I don't understand the difference between means and elements. I don't know what the means of committing a crime isn't the element of a crime. And your argument has to be, I suspect, that these are alternative elements. It is, Your Honor. And as you aptly noted, both this court and other circuits around the country have grappled with the precise distinction between alternate means and alternative elements. So you would support the notion that we get somebody to write this textbook on predicate offenses and send it to our court and the Supreme Court? We would have absolutely no objection to that. But what do you mean by your statement in your brief by saying by failing to challenge whether the code, SC code B qualifies as an ACCA predicate offense in his opening, McCloud has waived appellate review of the issue. That's right, Judge Shad. No, I know that's what you wrote, but I asked what you meant by it. At the time the government filed its brief, there were no Shepard-approved documents within the record that would support the notion that he was convicted of or pled guilty to burglary under subsection A, burglary of a dwelling. Why do you make that point, a whole waiver point, when you say it doesn't make any difference because the definitions are parallel? And probably overstated the ground on that point. But to go back to your- So you overstated and he understated on these briefs? That's probably a fair way to characterize it. Like I said, at the time the government filed its brief, there were no Shepard-approved documents in the record that would support the notion that the defendant's prior conviction was a conviction under subsection A. On August 13th, he did file a supplemental appendix which contained the sentencing sheets. And I think if you read the precedence investigation report, which is in the record, it assumes, as the government did in its brief, that the convictions were under subsection B because it discloses the factual basis. But you found out after you filed your brief that something had changed? That's right, when the appellate counsel called me. And you filed the joint appendix, but you didn't file any comment on what effect that made on your argument? No, Your Honor. It wasn't until appellate counsel telephoned me in mid-August to alert me of the fact that the sentencing sheet- it was his position that the sentencing sheets disclosed- Yeah, but this is mid-September. That's right. Then why wouldn't you have notified the court that your analysis changed? Well, I mean, for the reason that Judge Niemeyer indicated- Just leave us to figure it out? I'm sorry? Just leave us to figure it out? Well, it's the government's position that under either subsection, the ACCA would apply. Right, but we don't know that from your brief. Do we? That under either subsection? Well, in footnote one, the government raised the notion of United States v. Wright, whereby this court had determined that a prior conviction under South Carolina's signatory burglary statute, specifically subsection A- My point is it's just singularly unhelpful if you have a different theory now because the record shows something different by virtue of the supplemental appendix submitted. It seems to me that if your job is to assist the court- Understood, Justine, and I apologize for that. The government assumed that it had both of its bases covered by virtue of the footnote in its brief insofar as that it indicated that even- Wait a minute, wait a minute. You better stop right there. You told us it was waived, but you were going to take it on anyway, didn't you? Yes, Your Honor. You think it's still waived? No, and I don't think it frankly matters, Your Honor. I didn't ask that second part. That's right. You no longer think it's waived, do you, that argument, as B? So the fact is you say he's waiving the argument as to B. He was convicted under B. He loses. Wasn't that your argument? That's right. That's not completely your argument anymore, is it? Your argument is I now know that it looks like he wasn't convicted under B, but it doesn't really matter. That's a whole shift of argument. Well, to be sure, Judge Shedd, there are prior cases that district courts as well as this court have grappled with insofar as the charging documents conflicted with other Shepard-approved documents. You know what, though? That has nothing to do with your theory of the case, does it? Well, it does insofar as that this court has explicitly sanctioned— No, no, no. As you've argued in your brief to us, you argued in your brief he's waived B, any comment about B. That's right. But you argued to it. But your argument now is maybe A and B are both at play, but it doesn't matter, right? Exactly. That's precisely the point. I say you haven't—if you read these briefs and try to listen to what you're arguing today, you might think you're in the wrong courtroom from both of you. Because he didn't—he's making some argument that isn't at all clear in his brief either. You know, we're required to make—now, by the way, you may be right in the final analysis that it might not matter. But, I mean, the purpose of briefing and oral argument and briefing, as it does, I do, is to put your argument in front of us so that we then have the issues joined. That's right, Judge. And I'm just saying in this courtroom right now, on this case, although the law may turn out the same, we may know the law and we may be able to make through these arguments, as Judge Niemeyer is walking through the arguments with you, but that's not what is framed up for us to come in here this morning, in my humble opinion on the point. I just make that point. That's right, Judge. And, like I said, at the time we were briefing this appeal, we had the same— I know that. You want to go back to that? You couldn't have notified the court from—that's what I said, from mid-August to now it's been a month. Do you really want to make the argument that at the time I was writing, I didn't know, I found out later, and I just didn't let the court know? You don't really want to make that argument, do you? No, except I would just point out that we were, in light of the supplemental appendix that the appellant filed a few weeks ago, we were reevaluating our position, diving into the law as well as the Shepherd-approved documents to see what the actual prior conviction was. You knew something about it before you came in here this morning, didn't you? And you knew what you were going to say about it, didn't you? That's right. And I would just point out the fact that this court has before said that in the face of conflicting Shepherd-approved documents, whereby it is ambiguous what the conviction is, that a district court is authorized to rely upon the— It's not ambiguous, is it? As we now know the documents, that he was charged under B and pled guilty under A, and the plea was accepted. Right. So his conviction is under A. He was certainly sentenced as if he were under A. It's somewhat difficult to understand how there can be a factual basis for, you know, given the fact that the indictments unambiguously disclosed that the places that were burglarized were Walmart, ABC store, and businesses, how that could possibly be a dwelling. Well, not a dwelling includes a building, and a building could include those places. But the Supreme Court of South Carolina has narrowly circumscribed the dwelling element insofar as that it has required that an individual actually live in the place that's burglarized where it qualifies as a dwelling. Let me ask you this. If that's so, do you rely on just a categorical approach if it's under A? Do you need Shepherd documents? Well, I think you need Shepherd documents to determine the basis of the conviction because of the fact that both subsections. And your argument is that if you look at the Shepherd documents, the buildings involved were not boats, planes, and cars. Precisely. It was a building that qualifies under generic burglary. Absolutely. Right. And in this case, we have the benefit of the charging documents, which are the only documents in the record that unambiguously disclose what the places that were burglarized. Were they generic buildings or were they non-generic buildings that extended beyond the Supreme Court's definition in Taylor v. United States? So consistent with the way that this court has previously treated cases where Shepherd documents conflicted with one another, it's the government's position that the charging documents were probably the better approach to ascertain and determine what the actual prior conviction was. And I think you can assume that based upon the PSR in this case, which the district court accepted, and disclosing the facts surrounding those prior convictions. Wait, wait, wait, wait, wait, wait, wait. Now wait a minute now. Because we've decided that even under modified categorical, anything in the pre-sentence report, any comments, that's not usable, is it? No, it's not. It's not usable. So then why do we presume that he pled guilty to something that had to be a building in state court when what he pled guilty to didn't necessarily have to be? What he pled guilty to could have been an offense that would not count. Is that possible? Under A2, whatever that number is now, that nonviolent, could you plead under that in South Carolina and it would not qualify as a violent crime? Yes, there are circumstances. So why do we presume that's what he pled to, something that would count? Well, and I think that goes back to looking at the Shepherd approved documents in the record. I know that. Let's just start. What do we have? We have the indictment that says building, but he pled to something that doesn't have to be a building. What you're arguing is that it wasn't just a building, it's a Walmart. That's right. And this court has said that and authorized its reports to rely upon the charging documents. There's nothing in the- Ted's question, you're missing the point of his question. His question is if he pleads to a building, there's still the possibility the building could include a car, boat, or plane. Right. And your answer, I guess, is even if he changed the plea from Section B to Section A, the facts to which he pled still support a generic- Where's any proof of the facts he pled to? What if he says, I'll take a deal, but I'll tell you what, I didn't go in any damn Walmart, is what he would likely say. How do we know that- How do we know any of that? That he's admitting to Walmart by pleading guilty to second-degree non-violence. That's my question. That's my question. I think you get into somewhat dangerous territory when you start looking at the precise facts as far as the Supreme Court and DeKalb versus the United States. No, no, no, no, no, that's not the question. The question is he's charged under a document that makes out an offense under B. He did not plead to that offense under B. He pled A too. Why couldn't he have said, no, you've got the facts wrong too. I went on a spree and I was breaking into things. How do we know the facts don't say- I can't assume the facts of the indictment if he pled guilty to a different crime. I think one way to resolve or try to explain the inconsistency here between unambiguous charging documents that disclose where a grand jury found that by probable cause that he And there's absolutely no facts to support anything different. There are no facts. There are no facts other than he pled guilty to non-violence. You've got to establish the record. We can't just divine that because he pleaded guilty to subsection A that notwithstanding the change in the statutory section that it must have been a Walmart anyway. We have no idea. I think part of the explanation, as Judge Shedd alluded to in the previous appeal, and as he's well aware, is in South Carolina, law prosecutors have a significant caseload so they're trying to move quickly. And we're here by virtue of the fact that one of the plea negotiations, one of the tools that prosecutors typically use is that they say, if you're charged under second degree burglary, if you plead, we'll allow you to plead as a non-violent offense. You've got to establish the record. You're talking about sending someone to the penitentiary for a lot more time. We can't just say because things are kind of loosey-goosey in South Carolina that it must have been he was still pleading to a Walmart. Isn't that really what you're asking us to do? No. And why not, if not? Judge Keene, the government's point is that there are really two sets and only two sets of Shepard-approved documents in this appeal. You have the charging documents are one category. To which he did not plead. Category of documents. To which he did not plead. And the other are sentencing sheets, which indicate that he was sentenced for second degree burglary. Then there's a handwritten notation, a parenthetical following that, that says non-violent. Well, not even a parenthetical. I mean, all you have to do is look at page two of the supplemental. Plead to burglary, second degree, non-violent. And then some of those sentencing sheets, there should be five in there. Right. But it's pretty clear throughout consistently. Burglary, non-violent. And different from the indictment. Indictment for burglary, building. Led guilty to burglary, non-violent. To me, you know, I started out thinking you'd proved your case, but I'm really confused. I mean, if you can straighten it out, take a minute or two to do so, because it looks like things are heading south for you. Well, that's right, Judge Keenan. I mean, part of that is the way plea negotiations develop and evolve under South Carolina law. It's probably not helpful to provide an explanation. What's more helpful is for us to determine what he actually was convicted of in state court. And the question being raised now is, can we rely on the indictment for anything in this case? What's your response to that? And that was what the government was looking to, certainly after this joint supplemental. What's the answer to that is the question. I think the court is authorized to rely on the indictment, and the government would rest on the authority. Your response is what, we can rely on the indictment? That's right. For what purpose? To establish what the basis for the conviction or the place I was burglarized. And in support of that, I would rely on the authority of the United States versus Washington. Let me ask you this. I can create a hypothetical. They charged him with burglarizing the Walmart. And he says, I didn't burglarize the Walmart. It was a panel truck that was loading into the Walmart there, and I burglarized the panel truck. And the prosecutor says, okay, we'll take nonviolent and plead to that. The question is, is the indictment that's in there relevant at all if that indictment was not the basis of the plea? And certainly if there were shepherd approved documents. No, no, this case. Was the indictment in this case the basis of the plea? How can we tell that? At the state level? Yes, that's what we're looking at. The actual conviction. These documents. Right. These documents. Right. The indictment was obviously the catalyst of the plea, and then it appears that throughout plea negotiations, he agreed to a nonviolent sentence. In other words, to determine the conviction, the reason we have shepherd documents is to identify the nature of the conviction. That's right. And in this case, he was charged with a B burglary, building. But then when he pled, he didn't plead to B burglary, building. He pled to nonviolent dwelling. That's right. So now, is the indictment as framed in there relevant? I think it is, and I wouldn't point the court to United States versus Washington, which can be found at 629. Don't tell me the case. Just explain why we can use an indictment that was not the charge to which he pled. Well, in United States versus Washington, the charging documents disclosed that the defendant was charged with possessing with an intent to distribute cocaine, and then the docketing sheets revealed that he was convicted of a possession with an intent to distribute heroin. This court said that in the face of the ambiguity, the district court could rely in those circumstances on the charging documents to resolve the ambiguity in the prior conviction. Here, I mean, what's a little bit different about that case is that the conviction there specifically said what the subsequent conviction was under. Here, we don't have that. All we have is the handwritten notation indicating that the conviction was for a nonviolent. Is it a guilt to plead in South Carolina? Is there a factual recitation? Sometimes, Your Honor, it's very short. It's not even required, is it? That's right. So you can stand up, say, Your Honor, we've worked out a deal. My client's pleading to nonviolent. That's right. And the court will go, are you doing that? Yes, sir. Plea accepted. Exactly. So there doesn't have to be a single fact put on the record, does it? There does not. So in other words, I think that means, doesn't it, that what a person pleads to doesn't have to match up necessarily at all in South Carolina with what they're charged with. Right, which does form a complication when you're applying the cases. Well, the question then is, for us, how do we know what the nature of the conviction was in this case? In this case, I think the only Shepherd-approved documents in this case that point to the nature of the conviction are the charging documents, the indictments. But the charging documents didn't form the basis of the conviction. There's another document that says nonviolent. That's the document, too. That's right. So that points to something. But there's no other facts that would. Well, yeah, but it's a nonviolent offense. You've already answered this, I think. You could plead to a nonviolent offense that would not qualify as a predicate offense. You could in South Carolina plead. As Judge Niemeyer noted, it could be a car. I don't care about all that. But you acknowledge that. So do we do have a document? I would look at it and say, we have conflicting documents. Then we have to weigh what is the value of each document. But doesn't the government lose since the burden is on you? Wouldn't you lose that kind of contest? Because we have to know that what he was convicted of is sufficient for the purposes of being a predicate offense. I guess this is the same question everybody else is asking. How do we know it? You say there's a way you can think about it and figure it out. But that's not what the test is. The test is, from these, how are we assured that's what it is? Not this is likely or there's a way to figure it out. How are we assured in this case? That's right. In this case, it is difficult. However, the government would submit that the appropriate analysis is to find it divisible and then allow district courts to apply the modified categorical approach. We're doing that. That's right. We're looking. But the question is now when you apply the modified categorical approach, you look to find out what he was actually convicted of. Right. He was charged with burglary, second degree, building. And building is broad enough to include boats and so forth so you could look at the indictment and say, okay, it was a Walmart. That gets you home. But then it said, verdict, pled to burglary, second degree, nonviolent, which everybody seems to agree is different from burglary, second degree, building. Right. Okay. Now, if he pled to a crime that's nonviolent, the only evidence we have, the factual basis for what he actually was convicted of, which is what he pled to, is that it's nonviolent, which in and of itself disqualifies the crime because we're looking for violent crimes under the ACCA. No. I mean, to the extent it would. Burglary is a violent crime under Taylor because of the potential injury to people in the house. Right. So now all we have is that he pled guilty to second degree burglary, nonviolent. That's right. Which is A. And we have no other facts to what he pled. Right. But it is the government's position that even there could be circumstances whereby an individual does plead to a nonviolent conviction under. No, there isn't. Okay. But the other question is, your burden is to show this was a violent crime under ACCA. Correct. How do you show that with this record? And in this case, the only Shepard approved documents that disclose the precise place that were burglarized are the charging documents in this case. So your argument is he is a violent criminal because he pled guilty to an offense that satisfies the requirement that it be a violent offense because he pled guilty to a nonviolent offense. That's the argument? Well, he's violent because he is violent because of conviction, and the proof is he pled guilty to a nonviolent offense. Does that seem to make much sense? It doesn't really, does it? No, and I mean, both the Supreme Court and this Court, time and again, have held that the state courts' distinction between violent and nonviolent when you delve into the facts isn't what drives the. I know, but the problem is when you delve into the facts, there's no indication that there are any facts that would let us decide that something that documents call nonviolent, the state calls nonviolent, he pled to nonviolent, really doesn't mean that it means violent. Because you can plead to an offense. And by the way, I understand it doesn't relieve you of the burden of producing documents and the proof, but I'm telling you, try to figure out the meanderings of state court and how that's done. God bless you. Because it's largely impossible. Let me ask you just a hypothetical. We've gone over, but this is important because it's material to the whole outcome here. If he is charged with burglary, building, breaking in a Walmart, breaking and entering a Walmart, and he pled guilty, the facts were actually that he just walked in and shoplifted. And so he pled guilty to shoplifting. And they accepted the plea. Not burglary, shoplifting. Was that the Walmart? Would you have a predicate offense? No. No question about it, Your Honor. Okay, now just take my hypothetical and tell me what's the difference between my hypothetical in this case. Well, in this case, it's the government's position that, well, in the scenario that you have raised, shoplifting, the Supreme Court in Kansas, United States, said that the generic burglary by definition requires it to be an unprivileged and unlawful entry. I understand, but you're missing my whole point. My point is he was charged with burglary, generic burglary, qualifying as an offense. He pled guilty to shoplifting on that indictment. He just pled guilty to shoplifting, and that's all we have. And you've said that would not qualify as a predicate offense, right? That's right, because you would have. Now my question is, I know the reason why. Now my question is, why isn't that analogy the same as what occurred here? He was charged with burglary that qualifies. He pled guilty to something other than that burglary. And that something other than that burglary, we don't know what it was. Something that may or may not qualify. Right. How do you carry a burden on that? That's right. I mean, I think the government's burden would be, the analogy is similar but the government's burden would be, I think, impossible under that scenario insofar as that you had something, a Shepard-approved document in the record that categorically excluded the position whereby the ACCA could possibly apply. There are no circumstances where the ACCA could apply. You're saying under that hypothetical, the government absolutely loses. Under this current situation, the government might win. Correct. And so then you have to just resort to the Shepard-approved documents in the record. There's no Shepard document that says what he pled to, except for nonviolent burglary. So we don't know the facts of what he was pleading to. This record is totally inconclusive regarding the factual predicate for the plea that he entered. And so how can we uphold the ACCA predicate when we don't have any information in the record as to the factual basis for the plea that he entered? That's right. I mean, the government sees it's a difficult position, and that goes back to the fact that literally, as Judge Shedd indicated, it's by operation of South Carolina prosecutors. Well, that's an explanation for it, but that doesn't help us decide whether this is a predicate conviction. Right. And the only Shepard-approved documents in this case that could possibly allow the government to meet its burden in showing that the predicate offense is under the ACCA are the charges. And that's what you got. You put down what you got, and you think it's reasonable to rely on that. Yes. Okay. We'll turn Sonny Dye. Pardon me? Would you like to have some rebuttal, sir? Your risky proposition. Do you actually want to take rebuttal? I didn't mean to cut you off. You have five minutes reserved, and you can use all or none. Just a word about Shepard-approved documents. Our position is once Mr. McLeod pled to the A section, that the indictments are totally irrelevant after that point. That's all we have. Well, you mean, well, only in this case because we have nothing else. If we had, they aren't necessarily irrelevant. Well, our position is that it's not a divisible statute anyway. It's always broader than Gregory. Let me ask you this. If he was charged with breaking and entering a Walmart under B, and he goes into the court and says, we've reached a plea agreement, I want nonviolent A, and the law requires a factual basis for the plea, is there any way we could conclude that the factual basis was still his breaking and entering into a Walmart? Well, I don't know that the law requires it in Mr. McLeod's case, but it would seem that you couldn't say, well, could you restate that for me, please? I think I've gotten confused. Sure. And he got you. If he's charged with breaking and entering a Walmart under B, and he comes into court and pleads under A, nonviolent may be a better sentence. And the only factual basis for that, you need a factual basis to plead guilty. And the only factual basis is he broke in and entered a Walmart. Would that suffice to define what he pled to? Perhaps not. Fair enough. We'll adjourn the court, sign a die, come down and greet counsel.
judges: Paul V. Niemeyer, Dennis W. Shedd, Barbara Milano Keenan